UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
DEMOS P. DEMOPOULOS, STEPHEN MALONE,
and MICHAEL SPINELLI, as Union Trustees and
Fiduciaries of the LOCAL 854 PENSION FUND and
the LOCAL 854 HEALTH AND WELFARE FUND,

        Plaintiffs,

        -against-

JOHN CURCIO, WILLIAM CASSESE, and
KENNETH BARRETT, as Employer Trustees of the
LOCAL 854 PENSION FUND and the LOCAL 854
HEALTH AND WELFARE FUND,

        Defendants.
----------------------------------------------------------------- X

**REPORT AND RECOMMENDATION**
2:20-cv-01208 (WFK)(PK)

**Peggy Kuo, United States Magistrate Judge:**

Before me on referral from the Honorable Roslynn R. Mauskopf is a Motion to Dismiss and Compel Arbitration ("Motion," Dkt. 35) filed by John Curcio, William Cassese, and Kenneth Barrett (collectively, "Defendants") against Demos P. Demopoulos, Stephen Malone, and Michael Spinelli (collectively, "Plaintiffs").

## BACKGROUND

Plaintiffs are the union trustees and Defendants are the employer trustees of the Local 854 Pension Fund and the Local 854 Health and Welfare Fund (collectively, the "Funds"), which are governed by two trust agreements. (*See* "Pension Fund Trust Agreement," Ex. A to Amended Compl. ("Am. Compl."), Dkt. 22-1; "Health Fund Trust Agreement," Ex. B. to Am. Compl., Dkt. 22-2 (collectively, "the Trust Agreements").)

At the time they filed the Complaint on March 5, 2020 (Compl., Dkt. 1), Plaintiffs moved for

1

a preliminary injunction enjoining Defendants from seeking arbitration pursuant to a Notice of Intention to Arbitrate dated February 11, 2020 ("Feb. 11, 2020 Notice") delivered by Defendants to Plaintiffs. (Dkt. 2.) The Feb. 11, 2020 Notice sought to arbitrate:

> (1) Whether the vote during an Executive Session of the December 18, 2019 trustees meeting to remove Friedman & Anspach as counsel to the Local 854 [International Brotherhood of Teamsters ("I.B.T.")] Pension Fund and Local 854 I.B.T. Health and Welfare Fund was proper? If not, what shall the remedy be? (2) Whether the union trustees' subsequent refusal to allow removal of Friedman & Anspach as counsel to the Local 854 I.B.T. Pension Fund and Local 854 I.B.T. Health and Welfare Plan Fund was proper? If not, what shall the remedy be?

("Feb. 11, 2020 Notice," Ex. E to Am. Compl., Dkt. 22-5.) Defendants opposed Plaintiffs' motion and cross-moved to compel arbitration of the matters described in the Feb. 11, 2020 Notice. (Dkts. 14-18.) I issued a Report and Recommendation, which the Honorable Roslynn R. Mauskopf adopted in its entirety, recommending that the Court deny Plaintiffs' request for a preliminary injunction and that Plaintiffs be compelled to move forward with arbitration pursuant to the Feb. 11, 2020 Notice. *See Demopoulos v. Curcio*, No. 20-CV-1208 (RRM)(PK), 2021 WL 799330 (E.D.N.Y. Jan. 10, 2021), *R&R adopted*, 2021 WL 796064 (E.D.N.Y. Mar. 2, 2021) [hereinafter *Demopoulos I*]. The parties selected an arbitrator (*see* Minute Entry dated July 13, 2021), but Defendants withdrew the case from arbitration on September 13, 2021. (*See* Status Report, Dkt. 42.)

As set forth in their Amended Complaint filed on March 30, 2020, Plaintiffs assert four causes of action: (1) the Feb. 11, 2020 Notice violates the Trust Agreements and is a breach of Defendants' fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (Am. Compl. ¶¶ 88-95); (2) Defendant Barrett breached his fiduciary duties under ERISA in attempting to influence the Funds' suit against Advance Transit Co. Inc, a company owned by Barrett, and in moving to remove the law firm of Friedman and Anspach ("F&A") during an Executive Session of the Board in December 2019 (*id.* ¶¶ 96-106); (3) Defendants violated their fiduciary duties to act in the sole interest of the Funds' participants and beneficiaries under ERISA by

2

sending the Feb. 11, 2020 Notice (*id.* ¶¶ 107-15); and (4) the Feb. 11, 2020 Notice violates the Trust Agreements, for which Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, provides Plaintiffs with a cause of action. (*Id.* ¶¶ 116-22.)

On April 23, 2020, Defendants filed the Motion, in which they contend that Plaintiffs' fourth claim should be dismissed under Federal Rule of Civil Procedure 12(b), and that claims one, two, and three should be arbitrated. Defendants also argue that if the fourth claim is not dismissed, it too should be arbitrated. (*See* Defendants' Memorandum of Law in Support of Motion ("Def. Mem. of Law"), Dkt. 36).

For the reasons stated herein, I respectfully recommend that the motion to dismiss be denied and that the motion to compel arbitration be granted as to all claims.

## DISCUSSION

### I. Defendants' Motion to Dismiss

Defendants argue that the Court lacks subject matter jurisdiction over the fourth claim because LMRA § 301 applies only to claims brought by or against "labor organizations" and none of the parties here is such an organization. (*Id.* at 6-7); *see Loc. 100, Transp. Workers Union v. Rosen*, No. 6-CV-4787 (RPP), 2007 WL 2042511, at *5 (S.D.N.Y. July 13, 2007) [hereinafter *Rosen*] (analyzing as part of jurisdiction whether the action was between an employer and a labor organization). Thus, although Defendants state that Plaintiffs' fourth claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (*see* Def. Mem. of Law at 1), Defendants' arguments are more appropriately considered under Rule 12(b)(1), and I will treat the motion to dismiss as one under Rule 12(b)(1) rather than 12(b)(6). *See Pungitore v. Barbera*, No. 11-CV-6249 (VB), 2012 WL 2866293, at *1 n.2 (S.D.N.Y. Mar. 29, 2012) (treating defendants' motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), even though it was "style[d]" as a Rule 12(b)(6) motion because the arguments defendants made went to whether the court had jurisdiction over the dispute).

3

### A. Legal Standard

"[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* The Court draws all ambiguities and inferences in the plaintiff's favor and "may properly dismiss a case . . . if it 'lacks the statutory or constitutional power to adjudicate it.'" *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

### B. Analysis

Plaintiffs' fourth cause of action alleges that Defendants violated Section 301 of the LMRA, 29 U.S.C. § 185, when they issued the Feb. 11, 2020 Notice, because it was in violation of the terms of the Trust Agreements.

Section 301 creates a federal cause of action for breach of a collective bargaining contract and provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). As applicable here, a claim under Section 301 "must allege: 1) a violation; 2) of a contract; 3) between an employer and a labor organization." *Bannerjee v. Papadakis*, 583 F. Supp. 757, 760 (E.D.N.Y. 1984). The labor organization must represent employees "in an industry affecting commerce." 29 U.S.C. § 185(a).

Plaintiffs' allegations meet all the requirements. They assert that there was "no genuine vote or disagreement" on the replacement of the Funds' counsel F&A, and, therefore, Defendants

4

improperly served the Feb. 11, 2020 Notice in violation of the Trust Agreements.[1]  The Trust Agreements are contracts between certain specified employers and Local Union No. 854, I.B.T. ("the Union"), which is a "labor organization" in an industry affecting commerce within the meaning of the LMRA.  *See* 29 U.S.C. §§ 152(5), 142(1).[2]

Contrary to Defendants' argument, Section 301 is not limited to suits between a labor organization and an employer, or between labor organizations.

> Though the action in this case is between the Union and the Employer Trustees, § 301 requires that the *contract* be between an employer and a labor organization, not that the lawsuit be between these groups: "[i]t is well settled that parties in a § 301 action do not necessarily have to be employers or labor organizations.  The word 'between' in § 301(a) refers to 'contracts' between an employer and a labor organization, not to 'suits' between them."

*Rosen*, 2007 WL 2042511, at *5 (alteration and emphasis in original) (quoting *Painting & Decorating Contractors Ass'n of Sacramento, Inc. v. Painters & Decorators Joint Comm. of E. Bay Cntys, Inc.*, 707 F.2d 1067, 1069 (9th Cir. 1983)).  Moreover, "section 301 jurisdiction is not limited to collective bargaining agreements," but can also include trust agreements.  *Whelan v. Colgan*, 602 F.2d 1060, 1061 (2d Cir. 1979); *see Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 366 n.2 (1984) ("Section 301(a) of the LMRA provides a federal forum for suits to enforce labor contracts, including pension and welfare fund agreements.").

In *Whelan*, the Second Circuit rejected the argument that a district court lacked jurisdiction over a suit brought by employee trustees against employer trustees of a welfare trust fund pursuant to the LMRA.  The Court held that "[t]he District Court properly took jurisdiction" of the suit under Section 301 of the LMRA, "because the employee trustees' claim for relief was founded upon their

---

[1] The Trust Agreements' Arbitration Clause provides for arbitration when "the Board of Trustees is unable to agree upon or to settle any of the matters that arise during the administration of this Fund."  (*See* Pension Fund Trust Agreement, Art. XII; Health Fund Trust Agreement, Art. XII.)

[2] An "industry affecting commerce" is defined as "any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce."  29 U.S.C. § 142(1).

interpretation of the Welfare Fund Trust Agreement between the Union and the employers." *Whelan*, 602 F.2d at 1061.

Because Plaintiffs have alleged a violation of the Trust Agreements, which are contracts of the type described in LMRA § 301, jurisdiction over Plaintiffs' LMRA claim is proper. Accordingly, I respectfully recommend that Defendants' motion to dismiss Plaintiffs' fourth claim be denied.

## II. Defendants' Motion to Compel Arbitration

Defendants argue that the Court should compel arbitration of all Plaintiffs' claims, pursuant to Section 4 of the Federal Arbitration Act ("FAA"). (*See* Motion at 1; Def. Mem. of Law at 9.)

### A. *Legal Standard*

Section 4 of the FAA provides, in relevant part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. "Once a party petitions to compel arbitration, '[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" *Beijing Shougang Mining Inv. Co. v. Mongolia*, 11 F.4th 144, 162 (2d Cir. 2021) (quoting 9 U.S.C. § 4).

Under the FAA, a contract provision providing for arbitration of controversies arising out of the contract "shall be valid, irrevocable, and enforceable." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016) (quoting 9 U.S.C. § 2). The FAA "enunciates 'a strong federal policy favoring arbitration as an alternative means of dispute resolution.'" *Dylan 140 LLC v. Figueroa*, No. 19-CV-2897 (LAK)(DF), 2019 WL 12339639, at *5 (S.D.N.Y. Nov. 8, 2019) (quoting *JLM Indus., Inc. v. Stolt-Nielsen S.A.*, 387 F.3d 163, 171 (2d Cir. 2004)).

6

In determining whether to compel arbitration, the Court weighs: "(1) whether the parties agreed to arbitrate; (2) whether the plaintiff's claims fall within the scope of that agreement; and (3) if federal statutory claims are at issue, whether Congress intended those claims to be non-arbitrable." *Murphy v. Canadian Imperial Bank of Com.*, 709 F. Supp. 2d 242, 246-47 (S.D.N.Y. 2010). Related to these issues is whether the parties "clearly and unmistakably" agreed for an arbitrator to decide issues of arbitrability. *See Jillian Mech. Corp. v. United Serv. Workers Union Loc. 355*, 882 F. Supp. 2d 358, 365 (E.D.N.Y. 2012). The party moving to compel arbitration has the initial burden of establishing that a valid arbitration agreement existed. *Begonja v. Vornado Realty Trust*, 159 F. Supp. 3d 402, 409 (S.D.N.Y. 2016). If the Court finds that all of a plaintiff's claims are arbitrable, it must issue a "stay of proceedings when all claims are referred to arbitration and a stay [is] requested." *Katz v. Cellco P'ship*, 794 F.3d 341, 343 (2d Cir. 2015).

### B. Analysis

Because the underlying dispute presents a federal question, namely whether Plaintiffs are entitled to relief under ERISA and the LMRA, this Court indisputably has jurisdiction over this matter. *See Badgerow v. Walters*, 142 S. Ct. 1310, 1314 (2022) ("If the underlying dispute falls within the court's jurisdiction—for example, by presenting a federal question—then the court may rule on the petition to compel . . . regardless whether the petition alone could establish the court's jurisdiction.").

This Court has already determined that (1) by agreeing to the Arbitration Clause in the Trust Agreements, the parties entered into a valid agreement to arbitrate, and (2) because the Arbitration Clause does not contain clear and unmistakable evidence that the parties intended that an arbitrator decide issues of arbitrability, the Court shall decide issues of arbitrability. *See Demopoulos I*, 2021 WL 799330, at *5-6. I therefore analyze only whether Plaintiffs' claims fall within the scope of the Arbitration Clause and whether Congress intended the claims to be non-arbitrable.

7

### 1. Whether Plaintiffs' Claims Fall Within the Arbitration Clause's Scope

Doubts as to whether a particular issue falls within the scope of an agreement's arbitration clause should be resolved in favor of arbitration. *Murphy*, 709 F. Supp. 2d at 247 (citing *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999) (internal citation omitted)). "As such, courts 'will compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Id.* at 247 (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995)).

The first step in determining whether a dispute falls within an arbitration clause's scope is to "classify the particular clause as either broad or narrow." *Alemac Ins. Servs. Inc. v. Risk Transfer Inc.*, No. 03-CV-1162 (WHP), 2003 WL 22024070, at *3 (S.D.N.Y. Aug. 28, 2003) (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). As this Court already found in *Demopoulos I*, the Arbitration Clause is broad. *See* 2021 WL 799330, at *7-8. "With that determination, '"there arises a presumption of arbitrability" and arbitration of even a collateral matter will be ordered if the claim alleged "implicates issues of contract construction or the parties' rights and obligations under it."'" *ACE Cap. Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 34 (2d Cir. 2002) (quoting *Louis Dreyfus*, 252 F.3d at 224 (citation omitted)). When parties craft a broad arbitration clause, "presumably they intend all issues that 'touch matters' within the main agreement to be arbitrated." *Id.* (quoting *Louis Dreyfus*, 252 F.3d at 225 (citation omitted)).

Plaintiffs' first three causes of action allege that Defendants breached their fiduciary duties under ERISA. The alleged breaches relate directly to the questions posed in the Feb. 11, 2020 Notice regarding whether a vote was properly taken to remove F&A as counsel to the Funds. (*See* Am. Compl. ¶¶ 88-95 (arguing that serving the Feb. 11, 2020 Notice violated Defendants' duties "with respect to a plan, in accordance with the documents and instruments governing the plan . . ."); ¶¶ 96-106 (arguing that Barrett violated his fiduciary duty to avoid self-dealing by making the motion

8

to remove F&A and serving the Feb. 11, 2020 Notice); ¶¶ 107-115 (arguing that Cassese and Curcio breached their fiduciary duties by serving the Feb. 11, 2020 Notice and abstaining from the vote to remove F&A).)

The dispute over these questions arose during the administration of the Funds. *See Demopoulos I*, 2021 WL 799330, at *7-8 ("[Various] provisions of the Trust Agreements make clear that the two disputes which Defendants seek to have arbitrated—relating to whether a particular Board 'vote' was valid and the retention of outside counsel—are matters that arose during the administration of the Funds."). Therefore, whether any fiduciary duties were breached pursuant to the dispute is a collateral matter that also falls within the scope of the Trust Agreements' broad Arbitration Clause. *See, e.g., Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 668 (2d Cir. 1997) (finding fraud and unjust enrichment claims "touch[ed] matters" involved in agreement containing arbitration clause); *Alemac Ins.*, 2003 WL 22024070, at *5 (finding breach of fiduciary duty claims are collateral matters falling within scope of arbitration agreement).

Plaintiffs' fourth claim, that Defendants breached the Trust Agreements themselves, also falls within the scope of the Arbitration Clause. Matters that "implicate[] issues of contract construction or the parties' rights and obligations under it" are arbitrable when a contract employs a broad arbitration clause. *ACE Cap.*, 307 F.3d at 34 (citation omitted); *see also Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machs., Loc. Union 550*, 167 F.3d 764, 768 (2d Cir. 1999) (finding LMRA claim within scope of arbitration clause); *Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*, 633 F. Supp. 2d 109, 116 (S.D.N.Y. 2009) (finding breach of contract claim fell within contract's narrow arbitration clause).

### 2. Whether Congress Intended the Claims to be Non-Arbitrable

Although there is a presumption favoring arbitration of Plaintiffs' federal statutory claims, "Congress . . . may override the presumption favoring arbitration agreements by a contrary provision

9

in another statute." *Bird*, 926 F.2d at 119. After the moving party has established the existence of a valid arbitration agreement, "[t]he burden of demonstrating such congressional intent rests with the party opposing arbitration." *Id.*

Plaintiffs have failed to meet their burden of demonstrating that Congress intended to preclude arbitration of claims brought under ERISA. Enforcing the Trust Agreements' Arbitration Clause is consistent with ERISA's text and legislative history, which suggests that "ERISA's purpose is to secure guaranteed pension payments to participants by insuring the honest administration of financially sounds plan." *Id.* at 120 (quoting *Pompano v. Michael Schiavone & Sons, Inc.*, 680 F.2d 911, 914 (2d Cir. 1982)). "By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "Arbitration is not inconsistent with the underlying purposes of ERISA," and "statutory claims arising under ERISA may be the subject of compulsory arbitration." *Id.* at 122. Additionally, "parties may provide by agreement that such claims will be arbitrated." *Id.* Plaintiffs "suggest no reason why the substantive rights guaranteed by ERISA will be jeopardized if the arbitration agreement is enforced." *Id.* at 121. Thus, Plaintiffs' first three causes of action should be arbitrated.

Plaintiffs' fourth cause of action under the LMRA should also be arbitrated. One of the main purposes of the LMRA "is to encourage resolution of employment-related disputes through the grievance and arbitration procedures negotiated in a [collective bargaining agreement] . . . ." *Cantave v. Uptown Commc'ns & Elec. Inc.*, No. 14-CV-01838 (ERK), 2015 WL 4716539, at *5 (E.D.N.Y. Aug. 7, 2015); *see also Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 455 (1957) (The LMRA "expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way."). When the dispute underlying an LMRA claim is within the scope of a trust agreement's arbitration clause, as it

10

is here, arbitration of that claim is not inconsistent with the LMRA's purpose. *See, e.g.*, *Frontier Commc'ns of N.Y., Inc. v. Int'l Bhd. of Elec. Workers*, No. 07-CV-10327 (GEL), 2008 WL 1991096, at *2 (S.D.N.Y. May 6, 2008) (noting that court has authority to compel arbitration under LMRA § 301 where agreement's arbitration clause covers the asserted dispute); *Lockport Mem'l Hosp. v. United Pro. Nurses Ass'n*, No. 02-CV-0771A (SR), 2004 WL 1459226, at *2 (W.D.N.Y. June 25, 2004) ("[A] grievance-arbitration procedure in a collective bargaining agreement is enforceable pursuant to § 301 of the [LMRA].").

Accordingly, claims brought under the LMRA are arbitrable, and Plaintiffs have not met their burden of demonstrating otherwise.

### 3. Whether to Stay or Dismiss Plaintiffs' Claims

Having found that all Plaintiffs' claims are arbitrable, I respectfully recommend that this action be stayed pending the arbitrator's decision. *See Katz*, 794 F.3d at 345 ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").[3]

## **CONCLUSION**

Based on the foregoing, I respectfully recommend that Defendants' motion to dismiss Plaintiffs' fourth cause of action be denied and Defendants' motion to compel arbitration of all claims in the Amended Complaint be granted.

---

[3] Defendants request that the Court "stay or dismiss this matter pending the outcome of the arbitration." (Def. Mem. of Law at 2.)

11

Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
February 6, 2023